THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RALPH FOSTER JACKSON, Defendant-Appellant.

Second District   No. 2—89—0686

Opinion filed July 19, 1990.

94

Frederic R. Klein and Shirley M. Lukitsch, both of Schiff, Hardin & Waite, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Ralph Foster Jackson, appeals from an order of the circuit court of Du Page County denying his second amended petition for post-conviction relief (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 et seq.).

Defendant raises the following issues on appeal: (1) whether he was denied due process in his original sentencing hearing; and (2) whether he was denied effective assistance of counsel when his trial

counsel failed to present certain mitigation witnesses at his sentencing hearing.

On March 20, 1981, after a jury trial, defendant was found guilty of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11—3), and robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1) of Mary W. The trial court sentenced defendant to concurrent 30-year terms of imprisonment for rape and deviate sexual assault and a concurrent seven-year term of imprisonment for robbery. This court, on October 7, 1982, affirmed the convictions and sentences in an unpublished order pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23). *People v. Jackson* (1982), 109 Ill. App. 3d 1216, 451 N.E.2d 1042.

Defendant's convictions stem from an incident on December 2, 1980, in which Mary W. was accosted at the Fox Valley Shopping Center by a muscular black man later identified as defendant. Defendant grabbed Mary W. in the parking lot near the Chicago Health Club and dragged her to a nearby stairwell where he forced her to perform oral sex upon him. Defendant then raped and robbed the victim. She sustained bruises and a swollen eye as a result of the attack.

At the May 1, 1981, sentencing hearing, as evidence in aggravation, the State presented the testimony of Ruth Luthringer, who had been defendant's landlady in Oak Park, Illinois. In November 1980, Luthringer visited defendant at his apartment to collect past-due rent from him. A dispute ensued, and defendant grabbed Luthringer, shook her, and pushed her backward over the stove. After she began to scream for help, defendant placed his hand over her mouth, threw her to the floor, and started to shake her. He then "jerked" her up and shoved her toward the door. Defendant then grabbed her again, she began screaming, and, at about that time, the police arrived.

The State also presented the testimony of Betty K., who testified that, on the evening of June 27, 1979, she agreed to give defendant a ride when she was on her way to work. Defendant was a neighbor, and Betty K. had spoken to him regarding the purchase of an automobile. At one point, Betty K. allowed defendant to drive her car. Defendant drove to a secluded location, and when Betty K. got out of the car to resume driving, defendant told her to take off her clothes. Although Betty K. tried to run away, defendant stopped her and threatened to hurt her if she did not comply. After defendant forced her to disrobe, he made her perform an act of oral sex. He then raped her on the ground, drove her home, and threatened to cause trouble for her or have her killed if she went to the police. When she got home, Betty K. bathed, changed her clothes, and went to work, but

she did not stay there. She went to the hospital for an examination and reported the incident to the police.

Deputy Sheriff Philip Moore testified that on January 30, 1981, he was working at the Du Page County jail when he served defendant with an arrest warrant and indictment for the rape and deviate sexual assault of Betty K. The officer said that defendant admitted that he raped Betty K., but defendant asked how he could be charged with an offense that happened a long time ago.

In his testimony, defendant essentially denied that he had attacked Luthringer, that he had raped and sexually assaulted Betty K., or that he made any admissions to the officer. No other witnesses testified in behalf of defendant. Defendant's attorney argued that defendant was not the type of person who would commit these offenses and pointed out defendant's lack of a prior criminal record. Defense counsel then asked for leniency.

The trial court noted that it had no doubt that defendant had committed the rape for which he was found guilty, and it disbelieved defendant's version of the incident involving his landlady. The court further stated that defendant committed a sexual assault and rape of Betty K. The court also noted that defendant exhibited no remorse and that Betty K. had no motive to lie. The trial court found that, in view of the nature of the attack on the victim in this case, Mary W., and the death threats made to her, the defendant was a very serious threat to the community. The trial court sentenced defendant to the maximum imprisonment sentences of 30 years for the sexual offenses and seven years for the robbery, to be served concurrently.

In July 1981, when defendant was subsequently tried before a jury on the Betty K. charges, a mistrial was declared due to a hung jury. In April 1982, a stipulated bench trial was held in which the trial court received evidence including the transcript of the testimony given at the jury trial held in July 1981, and a transcript of the testimony given by Betty K. at the sentencing hearing held on May 1, 1981. The bench trial resulted in an order filed April 6, 1982, finding defendant not guilty of the charges of rape and deviate sexual assault of Betty K.

On November 17, 1988, and June 22, 1989, the circuit court heard arguments in support of defendant's petition for post-conviction relief as amended. It is clear from the transcript of the post-conviction hearing that the trial judge did consider Betty K.'s testimony regarding the alleged sexual offenses committed by defendant upon her in fashioning the sentences for the Mary W. convictions, and it is clear that this testimony did affect the sentences. The trial judge also

stated that he treated Betty K.'s testimony as evidence of an occurrence which had a bearing on defendant's character and his potential for rehabilitation and not as a conviction.

At the hearing on the post-conviction petition, the trial court also stated its belief that the failure of defense counsel at the sentencing hearing to present character witnesses in mitigation, including the testimony of defendant's parents and testimony of two other witnesses that was remote in time, would not have affected the sentencing of defendant. Finding no error of constitutional dimensions, the trial court denied defendant's petition for post-conviction relief.

On appeal, defendant contends that this case should be remanded to the trial court for a new sentencing hearing because: (1) applying *People v. Dean* (1987), 156 Ill. App. 3d 344, 509 N.E.2d 618, he was denied due process when the trial court considered evidence of a pending charge for which he was subsequently acquitted; (2) the trial court premised its sentence on the mistaken belief that defendant had been convicted of the sexual offense against Betty K.; (3) the trial court denied him due process when it determined that he was guilty of the sexual offense against Betty K.; and (4) he was denied effective assistance of counsel when trial counsel failed to introduce certain mitigation witnesses at his sentencing hearing.

We turn first to defendant's contention that *People v. Dean* (1987), 156 Ill. App. 3d 344, 509 N.E.2d 618, requires remandment for a new sentencing hearing. In *Dean*, the appellate court held that in sentencing the defendant the trial court's reliance on evidence of another offense for which defendant was subsequently acquitted required remandment to the trial court for a new sentencing hearing. 156 Ill. App. 3d at 355, 509 N.E.2d at 625.

We decline to follow *Dean* for two reasons. First, *Dean* relies on several cases that do not support its holding. In *United States v. Tucker* (1972), 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589, a case cited in *Dean*, the United States Supreme Court remanded for a new sentencing hearing because the trial court in sentencing the defendant relied on two prior *convictions* which were subsequently set aside as constitutionally infirm. The Supreme Court founded its holding in *Tucker* on the fact that the sentence was based at least "in part upon misinformation of constitutional magnitude." (404 U.S. at 447, 30 L. Ed. 2d at 596, 92 S. Ct. at 592.) In *Dean*, as in this case, the defendant was not convicted of the other offense at the time he was sentenced on the instant conviction; thus, the trial court did not rely upon "misinformation." *Tucker* is further distinguishable from *Dean* and the present case because in *Tucker* the convictions of defendant

were set aside based on constitutional infirmities, whereas in *Dean* and here, defendant was simply acquitted based on the evidence. Any suggestion in *Dean* that an acquittal of a defendant prior to his sentencing would preclude consideration of the evidence which led to the acquittal for purposes of sentencing is erroneous. See 3 W. LaFave & J. Israel, Criminal Procedure §25.1(g), at 119 (1984); *United States v. Morgan* (9th Cir. 1979), 595 F.2d 1134; *State v. Herzog* (1989), 112 Wash. 2d 419, 771 P.2d 739.

*Dean* also relies on *People v. Henderson* (1981), 95 Ill. App. 3d 291, 419 N.E.2d 1262, and *People v. Beyah* (1979), 72 Ill. App. 3d 690, 391 N.E.2d 96, to support its holding. Both of those cases are distinguishable from *Dean* and this case as they addressed the propriety of a trial court's consideration at sentencing of prior *convictions* which, unknown to the sentencing judge, were subsequently reversed. See *Henderson*, 95 Ill. App. 3d at 297, 419 N.E.2d at 1266; *Beyah*, 72 Ill. App. 3d at 697, 391 N.E.2d at 101.

■■ ■ We also decline to follow *Dean* because it conflicts with the general rule in Illinois allowing a trial court in a sentencing hearing to consider evidence of other criminal conduct, absent a conviction thereon, provided that evidence is relevant and reliable. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 498, 431 N.E.2d 344; see also *People v. Richardson* (1988), 123 Ill. 2d 322, 361-62, 528 N.E.2d 612.) While trial judges must be cautious in admitting such proof and sensitive to the possibilities of prejudice to the defendant if such information is inaccurate, it is clearly admissible under the appropriate circumstances. (*La Pointe*, 88 Ill. 2d at 499, 431 N.E.2d at 351-52.) The holding in *Dean* effectively neutralizes that general rule where such evidence provides the basis for an acquittal of defendant in a separate proceeding. *Dean* provides no support, nor can we identify any, for such a result.

■■ ■ Finally, we would point to the recent case of *Dowling v. United States* (1990), 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668, as further support for our criticism of and refusal to follow *Dean*. In *Dowling*, the Supreme Court held that it does not violate the due process test of fundamental fairness to consider, in a criminal trial on the issue of a defendant's guilt, evidence of criminal conduct relating to an alleged crime that defendant has been previously acquitted of committing in a separate proceeding. (*Dowling*, 493 U.S. at ____, 107 L. Ed. 2d at 720-21, 110 S. Ct. at 674-75.) Additionally, it has been held that limitations on the admission of evidence at trial do not apply equally to a sentencing hearing as it is necessary to the intelligent disposition of a sentence that the trial court be able to utilize

all relevant and accurate information. (*La Pointe*, 88 Ill. 2d at 496-98, 431 N.E.2d at 350-51.) Thus, if consideration of evidence of criminal conduct in a separate proceeding that defendant was previously acquitted of may be considered in a criminal trial, then it certainly may be considered under the less restrictive rules applicable to a sentencing hearing. We believe the holding in *Dean* is inconsistent with this conclusion and should not be followed.

We next address defendant's contention that the trial court denied him due process by basing the sentence, in part, on its mistaken belief that defendant had been convicted of another sexual offense. Defendant argues that this case is similar to *Townsend v. Burke* (1948), 334 U.S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252, in that the trial court imposed its sentence, in part, on the assumption that defendant had been convicted of a separate sexual offense when in fact he had not been.

Defendant's argument is based on his characterization of the trial judge's comments at his original sentencing hearing as indicating that the trial judge believed defendant had been found guilty of the sexual assault and rape of Betty K. Defendant points to one sentence from the transcript of the sentencing hearing in which the trial judge, in discussing the various aggravating and mitigating factors, stated that "[t]he defendant committed a sexual assault and a rape on Mrs. K⸺."

■ We do not perceive the trial judge's comment, however, to reflect a belief on his part that defendant had been convicted of sexual offenses by assaulting and raping Betty K. The word "committed" is not synonymous with "convicted" and certainly can be reasonably interpreted as meaning that the trial judge found that defendant had engaged in certain conduct against Betty K. Furthermore, the trial judge also commented that "Mrs. [K.] had absolutely no motive to lie" and "there could be no misidentification with respect to Mrs. [K.]." Both of these statements, which reflect the trial judge's evaluation of the evidence as to whether defendant did in fact engage in conduct against Betty K., are inconsistent with defendant's argument that the trial judge believed defendant had already been convicted of sexually assaulting and raping Betty K. Moreover, in considering defendant's petition for post-conviction relief, the same judge interpreted the comment relied upon by defendant in the following manner:

"I didn't consider the evidence presented as a conviction. It was just testimony regarding an occurrence which coincidentally happened to relate to a crime and a pending charge.
* * *

But in this case, I didn't consider a conviction. I considered testimony from Mrs. [K.].

\* \* \*

All I can tell you is: (1) I remember I relied on Mrs. [K's.] testimony. I believe that there was a sexual assault and I am using that in the generic sense, not whether or not there is proof beyond a reasonable doubt that the offense occurred, based on all of the other circumstances."

On this record, defendant's characterization of the trial judge's comment at his original sentencing hearing as reflecting the trial judge's belief that defendant had been previously convicted of sexual assault and rape is inaccurate, and his argument under *Townsend* must fail.

■■ ■ Defendant next maintains that he was denied due process because at his original sentencing hearing the trial court determined that he was guilty of sexually assaulting and raping Betty K., thus treating those charges as tantamount to evidence of a conviction. Such an argument is unpersuasive, however, in light of our previous interpretation of the trial court's comments regarding its assessment of Betty K.'s testimony. Further, any presentation of evidence regarding other criminal conduct allegedly engaged in by a defendant being sentenced necessarily requires a determination of whether that defendant did in fact engage in the alleged conduct. Such a finding is not tantamount to a determination of guilt such that the sentencing court would treat such a finding as equivalent with a guilty finding for purposes of sentencing the defendant. Further, the due process clause is not offended when a trial court in a sentencing hearing considers evidence of other criminal conduct which has not resulted in a prosecution and conviction, provided that evidence is relevant and reliable. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 498, 431 N.E.2d 344.) Accordingly, we find defendant's contention in this regard to be without merit.

Defendant's last contention is that he was denied effective assistance of counsel at his sentencing hearing because his attorney failed to call certain witnesses in mitigation. The State first responds that defendant's argument is waived because it was not raised in his direct appeal.

■ Defendant's argument in his post-conviction petition relies on affidavits of several potential mitigation witnesses. Those affidavits were not part of the record on appeal. Thus, defendant could not have raised the issue in his direct appeal, and the issue is not waived here. *Cf. People v. Caballero* (1989), 126 Ill. 2d 248, 274, 533 N.E.2d 1089.

In order to establish the ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Shum* (1987), 117 Ill. 2d 317, 369-70, 512 N.E.2d 1183.) Regarding the first element of this test, an alleged incompetency arising from a matter of tactics or strategy will not support a claim of ineffective representation. (*Shum*, 117 Ill. 2d at 370, 512 N.E.2d at 1205.) Furthermore, the failure to offer evidence in mitigation of sentence does not, in and of itself, demonstrate incompetence (*Shum*, 117 Ill. 2d at 370, 512 N.E.2d at 1205), and a competent attorney may decide, in an appropriate case, to forego presenting mitigating evidence and, instead, plead for mercy. (See *People v. Caballero* (1989), 126 Ill. 2d 248, 274-75, 533 N.E.2d 1089.) In all cases where the drawbacks of potentially mitigating evidence are obvious from the record, we must presume that the drawbacks, and not counsel's lack of diligence, were behind counsel's decision. *Caballero*, 126 Ill. 2d at 275, 533 N.E.2d at 1098.

In the present case, defendant relies on the affidavits of his parents as well as an affidavit of his high school principal and an acquaintance, the latter two who have had no contact with defendant since defendant graduated from high school in 1970, as evidence of mitigation which his trial counsel should have introduced at his sentencing hearing. We believe that trial counsel's failure to present any of these witnesses in mitigation was a matter of trial tactics and strategy in this case. There is no suggestion in the affidavits that defendant's trial counsel did not discuss the sentencing proceedings with defendant or that counsel refused to call these witnesses. The two nonfamily witnesses had no contact with defendant for over 10 years. Accordingly, they would have shed no light on defendant's recent character. Furthermore, the record shows that defendant's parents had relatively infrequent personal contact with defendant over the past 10 years. Moreover, defendant's parents would not be overly persuasive mitigation witnesses as their bias towards defendant would be obvious. Most of what is stated in the parents' affidavits as to what they would have testified to is contained in the presentence report. Trial counsel did advance evidence in mitigation at the sentencing hearing through defendant's own testimony of his denial of an altercation with his landlady and of his denial of the sexual assault of Betty K. as well as counsel's argument for leniency in sentencing because of defendant's lack of any prior criminal record and his personal background as shown in the presentence report. On this record, we do

not attribute counsel's decision not to present this evidence as a lack of diligence resulting in incompetent representation.

Additionally, defendant suffered no prejudice as a result of trial counsel's failure to present these witnesses in mitigation. As noted above, defendant's parents were obviously biased toward defendant, and the other two had no contact with him for over 10 years prior to his trial. Furthermore, there was considerable evidence in aggravation showing defendant's violent tendencies, including the evidence that defendant had sexually assaulted and raped another victim recently. In light of the limited value of the now proposed mitigation evidence and the evidence that was before the court at the sentencing hearing, we cannot say that trial counsel's failure to present this mitigation evidence created a reasonable probability that, but for counsel's decision, the outcome of the sentencing hearing would have been different.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.